UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

IRTH SOLUTIONS, LLC,

                                 Plaintiff,

                                                                  Case # 19-CV-6183-FPG

v.

                                                                  **DECISION AND ORDER**

S&S UTILITIES ENGINRING, LLC,

                                 Defendant.
_____

## INTRODUCTION

Plaintiff irth Solutions, LLC, sued Defendant S&S Utilities Engineering, LLC, for breach of contract and misappropriation of trade secrets. ECF No. 1. S&S counterclaimed for breach of contract. ECF No. 19. Now before the Court are irth's motion to dismiss S&S's counterclaim, ECF No. 21, and S&S's motion for judgment on the pleadings as to irth's claim for attorneys' fees against S&S, ECF No. 23. For the reasons stated below, irth's motion to dismiss is GRANTED and S&S's motion for judgment on the pleadings is DENIED.

## BACKGROUND

irth is a company that offers a web-based software program, DigTrack, that helps utility companies manage "dig tickets." Dig tickets notify utility companies and other underground asset owners of excavation jobs that will impact their property. When a utility receives a dig ticket, it must physically mark the location of its assets at the excavation site to protect the assets and avoid interruption of services. To manage the dig tickets, utilities engage "contract locators" to identify and mark locations in response to a ticket. The contract locators, in turn, rely on software like DigTrack to successfully manage and process the dig tickets.

S&S is a contract locator. In August 2017, it contracted with irth's predecessor, Bytronics, Inc., to license the DigTrack software. The licensing agreement between the parties provided that

Bytronics would provide technical support for the DigTrack software system within specified timeframes and would correct any defects in the system. ECF No. 21-2 at 2.

In or around November 2017, irth acquired Bytronics and was assigned the S&S licensing agreement. Following the assignment, S&S found that the customer service for DigTrack, which had previously been very good, deteriorated significantly. Specifically, irth's response times to S&S's request for support became late and, at times, caused DigTrack to become completely unavailable to S&S.

Consequently, S&S looked for an alternative service provider and ultimately left irth for a competitor, Apex Data Solutions and Services, LLC. irth alleges that S&S gave Apex's owner, Kyle Murphy, access to the DigTrack software system in contravention of the licensing agreement, which allowed Murphy to steal irth's trade secrets to improve Apex's competing software system, DigTix. As a result, irth filed a misappropriation of trade secrets lawsuit against Apex and Murphy, and later filed this breach of contract and misappropriation of trade secrets lawsuit against S&S. As part of this lawsuit, irth seeks a judicial declaration that it may recover from S&S the attorneys' fees and costs it incurs in prosecuting its lawsuit against Apex and Murphy. ECF No. 1 at 24 (irth's fifth claim).

S&S counterclaimed for breach of contract against irth based on irth's failure to provide timely customer support to S&S as required by the licensing agreement. ECF No. 19.

The Court first addresses irth's motion to dismiss S&S's counterclaim, and then turns to S&S's motion for judgment on the pleadings.

## IRTH'S MOTION TO DISMISS S&S'S COUNTERCLAIM

irth moves to dismiss S&S's breach of contract counterclaim on the basis that it is barred by several limitation of liability provisions in the licensing agreement. This is a matter of contract

interpretation which is "generally a question of law" and thus "suitable for disposition on a motion to dismiss." *Am. Auto. Ins. Co. v. Rest Assured Alarm Sys.*, 786 F. Supp. 2d 798, 803 (S.D.N.Y. 2011). On a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, the Court need not accept the allegations of the complaint regarding the construction of the [contract], but instead can interpret the contract before it. *Gerdau Ameristeel US Inc. v. Ameron Int'l Corp.*, No. 13 Civ. 07169 (LGS), 2014 U.S. Dist. LEXIS 100515, at *8-9 (S.D.N.Y. July 22, 2014). "At the motion to dismiss stage, a district court may dismiss a breach of contract claim only if the terms of the contract are unambiguous." *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 156 (2d Cir. 2016). "Whether a contract is ambiguous is a question of law for the court to decide." *Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 53 (2d Cir. 2012).

Here, S&S alleges that irth failed to timely and effectively provide customer support to S&S, causing the DigTrack system to be unavailable to S&S on several occasions. S&S claims that this breached the following provisions of the licensing agreement:

> **2.0 SCOPE**
>
> **2.1    Software** BYTRONICS will provide support for the software required to operate the DigTrack system. This support will be limited to the DigTrack System's executable programs, along with any ancillary programs authored by BYTRONICS Any defects in these programs will be corrected by BYTRONICS. . . .
>
> **2.3    Communication Services** . . . . Should the CLIENT experience difficulty in accessing the DigTrack site, BYTRONICS shall be notified immediately using the Emergency Support Request . . . .
>
> **3.0 RESPONSE TIME**
>
> **3.1    Normal Support Request** BYTRONICS' response to any Normal Support Request shall be made prior to the close of the following business day.
>
> **3.1 [sic] Emergency Support Request** BYTRONICS' response to any Emergency Support Request shall be to begin remediation as soon as practicable and continue until the system is functional.

ECF No. 21-2 at 2.

irth moves to dismiss S&S's counterclaim as being barred by Sections 8.2, 8.3, and 10.0 of the licensing agreement, which provide in relevant part as follows:

> **8.0 WARRANTY**
>
> **8.2**   BYTRONICS accepts no responsibility for the operation or performance of the program. The entire risk of use and consequences of use of the DigTrack System falls completely on the CLIENT.
>
> **8.3**   BYTRONICS shall not be liable in any respect for any loss, claim, injury, or damages alleged to have resulted from use of, or in reliance on the DigTrack System. In this respect, the CLIENT shall completely indemnify and defend for any such loss claim, injury or damages as provided below.
>
> **10.0 RISK ACKNOWLEDGEMENT**
>
> CLIENT acknowledges and accepts all risks associated with using the DigTrack System. The CLIENT also represents that they have developed a backup plan in the event the DigTrack System may become unavailable due to any reason whatsoever. This backup plan may include fax machines, serial printers, etc. In the event the DigTrack System may become unavailable, BYTRONICS' sole responsibility will be limited to the efforts to bring the system back online.

ECF No. 21-2 at 3.

The Court finds that these sections unambiguously bar S&S's counterclaim. In them, S&S agreed to absolve irth from liability for damages based not only on S&S's "use" of the DigTrack System, but also on its "reliance" upon the System. *See* ECF No. 19 ¶¶ 8, 10 (alleging that S&S "depends on the efficient management" of dig tickets and that a ticket management system like DigTrack "must be reliable"). S&S also agreed to "accept[] all risks associated with using the DigTrack System" and represented that it had "developed a backup plan in the event the DigTrack System may become unavailable due to any reason whatsoever." ECF No. 21-2 at 3. irth's potential failure to satisfy its support obligations is a risk "associated with" using the DigTrack System, and the System's unavailability "due to any reason whatsoever" includes, as S&S alleges here, irth's failure to timely resolve support requests.

S&S attempts to circumvent these limitations of liability by claiming that it does not seek damages "aris[ing] from DigTrack's unavailability or improper functioning," but rather "damages

4

arising from irth's . . . failure to meet the contractual requirements for [support requests]." ECF No. 23-1 at 6. But even so framed, S&S's alleged damages—including costs resulting from manpower and lost overhead to compensate for irth's failures and S&S's lost business resulting from the disruptions cause by the failure of the DigTrack platform—flow directly from DigTrack's unavailability and S&S's reliance on it. *See* ECF No. 19 ¶¶ 21-24 (alleging that the "inadequacy of the DigTrack platform" and irth's failure to perform under the licensing agreement forced S&S out of business and caused over $500,000 in damages).

Accordingly, the Court finds that the licensing agreement's unambiguous terms shield irth from liability for its failure to fully execute its support obligations. *See Marans v. Intrinsiq Specialty Sols., Inc.*, No. 18-CV-256 (VSB), 2018 U.S. Dist. LEXIS 169637, at *16 (S.D.N.Y. Sep. 30, 2018) (holding that under New York law, '[a] limitation on liability provision in a contract represents the parties' [a]greement on the allocation of the risk of economic loss in the event that the contemplated transaction is not fully executed, which the courts should honor.'" (quoting *Metro. Life Ins. Co. v. Noble Lowndes Int'l, Inc.*, 84 N.Y.2d 430, 436 (N.Y. 1994)); *McNally Wellman Co. v. N.Y. State Elec. & Gas Corp.*, 63 F.3d 1188, 1195 (2d Cir. 1995) ("It is axiomatic that parties to a contract must remain free to allocate risks and shield themselves from liability.").

S&S also attempts to avoid the licensing agreement's limitation of liability provisions by relying on warranty law. Specifically, it argues that the "general disclaimers" in Sections 8.2, 8.3, and 10.0 cannot override the more specific "warranties" found in Sections 2.0 and 3.0. ECF No. 23-1 at 7 (citing *Ward v. TheLadders.com, Inc.*, 3 F. Supp. 3d 151 (S.D.N.Y. 2014)). S&S's reliance on warranty law and *Ward* is misplaced.

5

In *Ward,* the plaintiff sued a job-matching website, TheLadders.com, for breaching its representation that it reviewed all job postings to ensure that they met the criteria of a $100k+ position. *Id.* at 157. TheLadders argued that the "Limitation of Liability" and "Disclaimer of Warranties" provisions in its website's Terms of Use precluded plaintiff's breach of contract claim. *Id.* at 160-161. The Limitation of Liability section said that TheLadders had no control over and made no representations about the content or quality of the jobs it posted, and the Disclaimer of Warranties section said that the information on the website was provided "as is" without any warranties or representations. *Id.* at 161. The court rejected TheLadders's arguments, finding that that the Limitation of Liability and Disclaimer of Warranties provisions directly and facially contradicted the TheLadders's earlier promise to review all job postings to ensure that they met the criteria of a $100k+ position. *Id.*

*Ward* is distinguishable from this case. The Limitation of Liability section in *Ward* functioned more like a disclaimer: it indicated that the defendant had no control over the content or quality of, and made no representations about, any job postings. *Id.* at 160. Here, in contrast, the limitation of liability provisions in Sections 8.2, 8.3, and 10.0 of the licensing agreement do not make or disclaim any representations about the nature or quality of the DigTrack system. Instead, they focus on liability: they provide that the "entire risk of use and consequences of use of the DigTrack System falls completely on" S&S; that irth "shall not be liable in any respect for any loss, claim, injury, or damages alleged to have resulted from use of, or in reliance on the DigTrack System;" and that S&S "acknowledges and accepts all risks associated with using the DigTrack System." *See generally World-Link, Inc. v. Citizens Telecomms. Co*., No. 99 Civ. No. 3054 (GEL), 2000 U.S. Dist. LEXIS 18510, at *12-13 (S.D.N.Y. Dec. 27, 2000) (contrasting a disclaimer of warranties provision, which defined the nature or quality of the services offered by

6

the contract, with a limitation of liability provision, which focused on liability and damages in the event of a breach).

Unlike in *Ward*, where TheLadders's Disclaimer of Warranties and Limitation of Liability sections facially contradicted its earlier representation that it would vet the job postings, here, Sections 8.2, 8.3, and 10.0's limitations of liability do not contradict Sections 2.0 and 3.0's promises to provide support to S&S. Section 10.0 even reaffirms irth's responsibility "to bring the system back online." ECF No. 21-2 at 3. Because these limitation of liability provisions do not conflict with irth's promise to provide support, they are not rendered invalid. *See Tecnoclima, S.p.A. v. PJC Grp.*, No. 89 CIV. 4337, 1994 U.S. Dist. LEXIS 16750, at *3-4 (S.D.N.Y. Nov. 22, 1994) ("A limitation of damages clause is distinct from a disclaimer or warranty. As there is no conflict between the two, the warranties . . . would not render invalid the limitation of damages clauses within the respective contracts.") (internal citation omitted).

The limitations on irth's liability here are more similar to those in *Roberts v. Weight Watchers Int'l, Inc.*, 217 F. Supp. 3d 742, 747 (S.D.N.Y. 2016), *aff'd,* 712 F. App'x 57 (2d Cir. 2017). In *Roberts*, the plaintiff sued Weight Watchers after becoming dissatisfied with its glitchy online program. *Id.* at 748-49. But the program's subscription agreement contained a Limitation of Liability provision which said that Weight Watchers "shall not be liable for any . . . damages whatsoever" and that a plaintiff's sole remedy for dissatisfaction with the program was to discontinue using it. *Id.* 747-48. The court found that this provision clearly limited plaintiff's recourse to cancellation or termination of the subscription agreement and barred plaintiff's breach of contract claim for money damages. *Id.* at 754-55.

Similarly, here, the licensing agreement provides that irth "shall not be liable in any respect for any loss, claim, injury, or damages alleged to have resulted from use of, or in reliance on the

7

DigTrack System," and it includes a Termination section that provides that if either party defaults, the other party can terminate the agreement. ECF No. 21-2 at 3, 4. Courts have upheld similar limitation of liability provisions in the absence of "unconscionable conduct or unequal bargaining power between the parties," neither of which S&S has alleged here. *DynCorp v. GTE Corp.*, 215 F. Supp. 2d 308, 317 (S.D.N.Y. 2002) (internal citations omitted) (quoting *Metro. Life Ins.*, 84 N.Y.2d at 436); *see also, e.g.*, *Florence v. Merchants Cent. Alarm Co.*, 51 N.Y.2d 793, 794-95 (1980) (upholding term in burglar alarm contract providing that the "sole duty" of the alarm company was to notify the police and subscriber if illegal entry was indicated, that the alarm company "assume[d] no responsibility whatsoever for the condition of" the alarm, and that the company's liability for any loss sustained through burglary or otherwise was limited to $50.00); *Constellation Brands, Inc. v. Keste, LLC*, No. 14-CV-6272 CJS, 2014 U.S. Dist. LEXIS 159753, at *3, 16 (W.D.N.Y. Nov. 13, 2014) (upholding limitation of liability provision that excluded incidental or consequential damages and capped total damages at a certain dollar amount); *My Play City, Inc. v. Conduit Ltd.*, 589 F. App'x 559, 562-63 (2d Cir. 2014) (summary order) (upholding term stating that "in no event shall [defendant's] liability for any claim arising out of or related to this agreement, the use or inability to use the [widget] . . . exceed $5,000"); *Priority Fulfillment Servs. v. Gaiam Ams., Inc.*, No. 17 Civ. 5504 (PAE), 2018 U.S. Dist. LEXIS 98534, at *15-17 (S.D.N.Y. June 11, 2018) (upholding provision excluding all damages beyond direct damages and barring claim for consequential damages).

Accordingly, the Court finds that the limitation of liability provisions in Sections 8.2, 8.3, and 10.0 of the licensing agreement bar S&S's breach of contract claim. irth's motion to dismiss is therefore granted, and S&S's counterclaim is dismissed.

# S&S'S MOTION FOR JUDGMENT ON THE PLEADINGS

"The same standard applicable to Fed. R. Civ. P. 12(b)(6) motions to dismiss applies to Fed. R. Civ. P. 12(c) motions for judgment on the pleadings." *Eastman Kodak Co. v. Henry Bath LLC*, 936 F.3d 86, 93 (2d Cir. 2019).

In its complaint against S&S, irth requests a judicial declaration that it may recover from S&S the attorneys' fees and costs it incurs by prosecuting its lawsuit against Apex. ECF No. 1 at 24. As a reminder, irth sued Apex, a direct competitor, for misappropriation of trade secrets after S&S allegedly gave Apex access to DigTrack, thereby allowing Apex to steal irth's trade secrets and improve its competing software system, DigTix. irth contends that, because S&S's breach of the licensing agreement forced irth to sue Apex to protect its trade secrets, S&S should have to pay for irth's attorneys' fees and costs in the Apex lawsuit. In support of this argument, irth relies on Section 11.0 of the licensing agreement, which states in relevant part that:

> The CLIENT acknowledges that the DigTrack System and components that comprise it, the pricing and terms of this Agreement, are trade secrets of BYTRONICS and that if it is used in any manner not expressly authorized by this Agreement, BYTRONICS will suffer immediate and irreparable harm. Therefore, the CLIENT agrees that in any case of such unauthorized use or disclosure, BYTRONICS shall be entitled to an injunction against such unauthorized use or disclosure, in addition to any other rights or remedies to which it may be entitled. BYTRONICS shall be entitled to the costs and fees of any such action including but not limited to actual attorneys fees incurred. . . .

ECF No. 21-2 at 4.

S&S requests dismissal of irth's attorneys' fees claim for two reasons.

First, S&S argues that the language of Section 11.0 only authorizes fees against S&S in a lawsuit against S&S (not against a third party like Apex). The Court disagrees. Nothing in Section 11.0's language limits irth's recovery of attorneys' fees to those incurred in a lawsuit against S&S. Instead, Section 11.0 states that in the event of any use or disclosure of DigTrack not authorized by the licensing agreement, irth shall be entitled to an injunction *against any such unauthorized*

9

*use or disclosure*, and to the costs and fees of *any such action*. This language does not require the injunction or the action to be against S&S.

Such an interpretation is contemplated under New York law, which the parties agreed would govern the licensing agreement. ECF No. 21-2 at 4. Under New York law, "if, through the wrongful act of his present adversary, a person is involved in earlier litigation with a third person in bringing or defending an action to protect his interests, he is entitled to recover the reasonable value of attorneys' fees and other expenses thereby suffered or incurred." *Travelers Cas. & Sur. Co. v. Dormitory Auth.-State of N.Y.*, 734 F. Supp. 2d 368, 386 (S.D.N.Y. 2010) (quoting *Shindler v. Lamb*, 211 N.Y.S.2d 762, 765 (N.Y. Sup. Ct. 1959) and identifying the "*Shindler* exception" as a well-recognized exception to the American Rule on attorneys' fees); *see also Versatile Housewares & Gardening Sys., Inc. v. Thill Logistics, Inc.*, 819 F. Supp. 2d 230, 244 (S.D.N.Y. 2011) ("*Shindler* allows the recovery of fees incurred in prior litigation against *third parties* caused by a wrongful act, including a breach of contract, of the defendant."). Here, by allegedly allowing Apex to access DigTrack, S&S, irth's present adversary, committed a "wrongful act" that required irth to file its "earlier litigation" against a "third person," Apex. Thus, the *Shindler* exception applies to this case and irth may be able to recover attorneys' fees against S&S arising from its lawsuit against Apex.

Second, S&S argues that Section 9.2 of the licensing agreement, which provides that neither party shall be liable for incidental or consequential damages suffered by the other party in any matter covered by the agreement, bars irth's claim for attorneys' fees. Again, the Court disagrees. While the parties dispute whether attorneys' fees in the Apex lawsuit would constitute general or consequential damages in the instant case, the Court finds that even if they would constitute consequential damages, Section 9.2 does not bar their recovery because Section 11.0

10

more specifically provides for them. Where there appears to be a conflict between two contractual provisions, the specific provisions take precedence over the general ones. *Barclays Capital, Inc. v. Giddens (In re Lehman Bros. Holdings Inc.)*, 761 F.3d 303, 313 (2d Cir. 2014). Here, Section 9.2 bars the general category of "incidental or consequential damages," but Section 11.0 specifically provides for attorneys' fees and costs in an action against the unauthorized use or disclosure of DigTrack.

Accordingly, S&S's motion for judgment on the pleadings dismissing irth's claim for attorneys' fees is denied.

## CONCLUSION

For the foregoing reasons, irth's motion to dismiss S&S's counterclaim (ECF No. 21) is GRANTED, S&S's counterclaim is DISMISSED, and S&S's motion for judgment on the pleadings as to irth's claim for attorneys' fees against S&S (the fourth claim of irth's complaint), (ECF No. 23) is DENIED.

IT IS SO ORDERED.

Dated: November 4, 2019
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court